Tomás Cano & Co., Plaintiffs and Appellees, *v.* Robles et al., Defendants and Appellants.

Appeal from the District Court of Guayama in an Action of Nullity.

No. 2814.—Decided December 21, 1923.

Building Declaration—Record of Title—Innocent Purchaser—Mortgage—Notice— Foreclosure— Annulment Proceedings — Estoppel. — The mere record of the building declaration in the registry did not make the appellee an innocent purchaser for value; but the record in the registry of property of the house and mortgage was constructive notice to all the world that the appellee had a *prima facie* lien on the house and a right to foreclose thereon, and the proper course of the appellants would have been to bring proceedings in the district court to annul the title and record apparently existing in favor of the appellee, albeit such proceedings would have been unavailing by reason of estoppel.

Evidence — Privileged Communication — Notary Public—Attorney-at-law—Fraud.—The instructions or communications to a notary are not privileged,

as in the case of an attorney, and in a case in which fraud is charged a notary may be compelled to testify if certain matters like closed wills are excluded.

The facts are stated in the opinion.

Messrs. *V. F. Rodríguez Ortiz, C. Domínguez Rubio* and *F. Navarro Ortiz* for the appellants.

Mr. *A. Martínez Dávila* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

This is an appeal from a judgment of the District Court of Guayama annulling various acts of appellants.

On October 12, 1920, the firm of Robles & Co., Succs., made a building declaration (*declaración de obra*) of a house located in Cidra. The lot on which the house is constructed belonged to the municipality and the declaration was solemnized before notary Miguel Guzmán. Record of this declaration was obtained in the registry of property. On the same day and before the same notary the mortgage, the object of this suit, was executed. On the same day the said notary performed a number of acts for the various parties to this suit and all of them took place in the said house. The appellants maintain that the house in question did not belong to the firm of Robles & Co., Succs., but to Fructuoso Robles.

The evidence tends to show that all the parties to this suit were completely cognizant of the building declaration made by the said firm, and that Fructuoso Robles knew all about it we have no question. Rather naively, if not with a conscious intention to defraud, and badly advised, Fructuoso Robles made a building declaration of the same house and secured its record in the registry of property. When the registrar of property was asked to certify the second declaration he said he would not make the certificate without referring to the previous record of the house. It was his opinion, as disclosed somewhere in the evidence, that the second record never should have been made.

The transcript reveals the following presumptively fraudulent acts: On the 28th of April, 1921, Fructuoso Robles, setting up that he was the owner of the house in question, mortgaged it to two of the appellants. Record was obtained of the mortgage as well as of the declaration. Presumptively, too, Fructuoso Robles knew of the attitude of the registrar, but his attorney surely did. While the District Court of Guayama was then in public session the said two appellants hastened, not to the District Court of Guayama, but to the District Court of Ponce, where, in ordinary civil form, a mortgage proceeding was instituted. Fructuoso Robles appeared, consented to a judgment and waived his right to appeal. As a strong badge of fraud in the case the mortgage to the said two appellants was given a life of only twenty-two days and was made to expire one month and twenty-three days prior to the expiration of the mortgage of the complainant firm.

In the absence of an adequate explanation, not to be found in the record, the whole transaction was tainted with fraud. Each and all of the parties to it, even remotely supposing a lack of actual knowledge, were so clearly put upon notice that the judgment of the District Court of Ponce, so obtained, was utterly void and worthless.

We quite agree with the appellants that the mere record of the building declaration in the registry did not make the appellee an innocent purchaser for value. The building declaration and the mortgage of said appellee were executed contemporaneously before the same notary and probably were presented together to the registrar. What we do, however, hold was that the record in the registry of property of the house and mortgage was constructive notice to all the world that the appellee firm had a prima facie incumbrance on the house and a right to execute thereon. As appellee points out, the proper course for said appellants,

supposing a valid claim, would have been to begin a proper proceeding in the District Court of Guayama to annul the title and record apparently existing in favor of appellee firm. We think, however, that such a proceeding would have been unavailing and the indications are that all the appellants thought so too.

We think such a proceeding would have been fruitless, because Fructuoso Robles, by his acts on October 12, 1920, was completely estopped to set up any title in himself. And as he stood by and permitted a title to arise in another person, anyone claiming under or through him could acquire no rights, always supposing no question of the rights of innocent purchasers (terceros) arose.

Incidentally, we may say that mortgagee-appellants in this case were in no sense innocent purchasers. They were definitely apprised by the previous record of the house in the name of the mortgagor of the appellee firm. Furthermore, the evidence tends to show that they were present when the mortgage to appellee was executed; that they knew about it directly and obtained a different mortgage or quasi-mortgage security from their debtor Robles. Everyone in the case employed Miguel Guzmán to act for them. On October 12, 1920, there was a sort of concourse of creditors in the house of Fructuoso Robles. On the lower floor of that house the firm of Robles, Arriaga & Co., Succs., had its shop and so did their predecessors. Miguel Guzmán gave positive testimony to the effect that everyone present knew what was happening.

Fructuoso Robles was a member of the firm of Robles, Arriaga & Co., predecessor of Robles, Arriaga & Co., Successors. He sold out his interest and the second firm arose in consequence. These acts were reduced to form and executed before the same notary, Miguel Guzmán, on October 12, 1920. Also Robles owed money to Arriaga, for which

the principal appellants were sureties. On said October 12, 1920, Robles executed a mortgage note to his sureties on property in Caguas. The admission of this document, as we shall see hereafter, was assigned as error, but independently of its admission there was testimony tending to show the execution of a document by Robles and his acts in regard thereto. All of these acts and the intervention of Robles make stronger the knowledge and estoppel against him.

The principal claim of appellants was that the house in question did not belong to the firm of Robles, Arriaga & Co., Successors, but to Robles himself. Because of the foregoing considerations we shall not attempt to analyze the evidence, but the indications are that the house belonged to the firm at the time of the mortgage to the appellee. That it had belonged to the predecessor firm or firms of Robles, Arriaga & Co., Successors, does not seem to be disputed. It was upon the dissolution of these previous firms that Robles claimed a transfer to himself. The court found this fact in favor of appellee firm and we find no reason to reverse the finding.

There was an attempt on the part of appellants to show that the managing partner of the appellee firm, Mr. Mieres, knew that the house belonged to Robles. The proof tended to show the contrary. However, even if he had the knowledge, if Robles stood by and suffered the conveyance, especially as the mortgage arose because of a debt of the firm of which he was a member, the said Mieres was justified in believing that Robles was consenting to the declaration of the house being executed and hence recorded in the name of Robles, Arriaga & Co., Successors.

The court was not in error in admitting the so-called mortgage note which Robles executed to protect his sureties. It was one of the *res gestae* in a chain of circumstances surrounding this case and had a distinct bearing on the fraud

of said sureties in attempting to set up a different mortgage right.

Another error alleged was the act of the court in permitting notary Miguel Guzmán Texidor to tell of the instructions of his clients, the said sureties, in regard to the document immediately before mentioned. The theory of this objection was that such instructions were privileged communications.

The court should have made it clear to the parties whether he admitted the said testimony or not. Instead, the court admitted it conditioned upon some action to be taken by the objecting party, we are not clear exactly what. On the whole, it may be said that the evidence was admitted and considered by the court.

The instructions or communication to a notary are not privileged. A notary differs from a lawyer in this regard. Although not necessary for the decision of this case, we have some idea that in special cases like the present one where fraud is charged an attorney may be compelled to declare, but in any event a notary may be so compelled, especially, perhaps, if certain matters like closed wills are excluded. There was no reason for secrecy here.

Furthermore, the admission of this evidence in any event had so little bearing on the main events as to make any supposed error in admitting the declarations harmless.

The other errors alleged by the several appellants have been disposed of in our main considerations.

The judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Aldrey, Hutchison and Franco Soto concurred.